Slip Op. 25-85

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - - - - - -x  Senior Judge Aquilino
                                         :
AD HOC SHRIMP TRADE ACTION COMMITTEE,
                                         :
                    Plaintiff,
                                         :
              -and-
                                         :
AMERICAN SHRIMP PROCESSORS ASSOCIATION,
                                         :
              Intervenor-Plaintiff,
                                         : Consol. Court
              v.                           No. 23-00202
                                         :
UNITED STATES,                             PUBLIC VERSION
                                         :
                    Defendant,
                                         :
              -and-
                                         :
MEGAA MODA PRIVATE LIMITED,
                                         :
              Intervenor-Defendant.
                                         :
- - - - - - - - - - - - - - - - - - - - -x
```

Opinion & Order

[Remand redetermination by International
 Trade Administration affirmed; judgment
 for the defendant.]

Dated: July 8, 2025

Nathaniel M. Rickard and Zachary J. Walker, Picard, Kentz & Rowe, LLP, Washington, D.C., for the Ad Hoc Shrimp Trade Action Committee.

Roger B. Schagrin and Nicholas J. Birch, Schagrin Associates, Washington D.C., for the American Shrimp Processors Association.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington,

D.C., for the defendant United States.  With her on the brief <u>Yaakov M. Roth</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Reginald T. Blades. Jr</u>., Assistant Director.  Of counsel <u>Ruslan Klafehn</u>, Office of the Chief Counsel for Enforcement and Compliance, U.S. Department of Commerce, Washington, D.C.

    <u>Robert G. Gosselink</u>, <u>Aqmar Rahman</u>, and <u>Sezi Erdin</u>, Trade Pacific PLLC, Washington, D.C., for Megaa Moda Private Limited.

      AQUILINO, Senior Judge:  Presumed herein is familiarity with the court's prior opinion, <u>Ad Hoc Shrimp Trade Action Committee v. United States</u>, 48 CIT ___, Slip. Op. 24-93 (Aug. 15, 2024) ("Order").  In short, the plaintiffs Ad Hoc Shrimp Trade Action Committee ("AHSTAC") and American Shrimp Processors Association ("ASPA") persuaded to remand for reconsidering the inclusion of certain home market sales in the calculation of normal value for Megaa Moda Private Ltd. ("Megaa Moda") in <u>Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2021-2022</u>, 88 Fed.Reg. 60431 (Dep't Commerce Sept. 1, 2023) ("<u>Final Results</u>"), P.R. 205, as reported by the International Trade Administration ("ITA"), U.S. Department of Commerce.  They now contest ITA's Final Results of Redetermination Pursuant to Court Remand ("<u>Remand Results</u>") for reaching the same conclusion on inclusion.

I

Remand results will be set aside if "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i)[1].  They are also reviewed for compliance with a court's order therefor.  <u>See</u>, <u>e.g.</u>, <u>Olympia Indus., Inc. v. United States</u>, 23 CIT 80, 82, 36 F.Supp.2d 414, 416 (1999).

II

Briefly addressing the intervenor-defendant's separate Rule 56.2 motion for judgment here, the court concluded that it fell short in challenging ITA's denial of respondent Megaa Moda's claimed offset for short term interest income (under an "interest subvention program"); however, the Order did not foreclose revisiting Megaa Moda's challenge to ITA's denial of an interest income offset, described as "interest on FD with FBL", should the agency choose to do so.  On remand, ITA chose not to revisit that issue, and Megaa Moda does not challenge that decision at this point.

---

[1]  <u>See</u>, <u>e.g.</u>, <u>Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States</u>, 39 CIT ___, ___, 121 F.Supp.3d 1263, 1268 (2015).

III

A

This type of proceeding determines the margin of dumping for a period of review, <u>i.e</u>., the amount by which the "normal value" of a class or kind of foreign merchandise exceeds its U.S. sale price, <u>i.e</u>., either export price or constructed export price. 19 U.S.C. §1673.  Normal value is the price at which the foreign like product is first sold (or offered for sale) for consumption in the exporting country in the usual commercial quantities and in the ordinary course of trade, if such a price is representative, and assuming ITA does not determine that a particular market situation in such other country prevents a proper comparison with the export price or constructed export price.  <u>See</u> 19 U.S.C. §1677b(a)(1)(B). In order for the home market to serve as a viable basis for calculating normal value, the aggregate volume of foreign like product home market sales must be at least five percent of the aggregate volume of U.S. sales.  <u>See</u> <u>id</u>. §1677b(a)(1)(B)(ii)(II). If no viable home market exists, ITA may use a respondent's foreign like product sales to a third country market as a basis for comparison.  <u>Id</u>. §1677b(a)(1)(C); <u>see</u> 19 C.F.R. §351.404.

ITA explains that in order to designate a respondent's transactions as sales in the home market, to a third country, or to

the United States, it applies a "knowledge test", which considers both a seller's actual knowledge and the seller's constructive knowledge that it "should have known" of the final destination of the merchandise at the time of sale. Remand Results at 8, referencing Grain-Oriented Electrical Steel from the Czech Republic: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, 79 Fed.Reg. 58324 (Sept. 29, 2014), and an accompanying issues and decision memorandum ("IDM") at Comment 2.

ITA states that its general practice in conducting the knowledge test is to consider not only the seller's representations but also documentary or physical evidence that the producer knew or should have known the destination of the merchandise (either for export or consumption in the home market) at the time of sale, because this type of evidence is more probative, reliable, and verifiable than unsubstantiated statements or declarations that may be in the best interest of the investigated company sourcing those statements. Remand Results at 8; see, e.g., Tin Mill Products From the Netherlands: Final Negative Determination of Sales at Less Than Fair Value, 89 Fed.Reg. 1524 (Jan. 10, 2024), and accompanying IDM at Comment 2; Certain Lined Paper Products from India: Final Results of Antidumping Duty Administrative Review and Final

Determination of No Shipments; 2020-2021, 88 Fed.Reg. 21971 (April 12, 2023) and accompanying IDM at Comment 1; Certain Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty Administrative Review, 76 Fed.Reg. 36086 (June 21, 2011), and accompanying IDM at Comment 1. Thus, ITA claims that in prior cases it has focused on whether the relevant party prepared or signed any certificates, shipping documents, contracts, or other such documents that indicate the destination of the merchandise. Remand Results at 8, referencing Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Synthetic Indigo from the People's Republic of China, 64 Fed.Reg. 69727 (Dec. 14, 1999), unchanged in Synthetic Indigo from the People's Republic of China; Notice of Final Determination of Sales at Less Than Fair Value, 65 Fed.Reg. 25706 (May 3, 2000) ("Synthetic Indigo") and accompanying IDM.[2] ITA will

---

[2]    If Synthetic Indigo stands for that proposition, it does so only tangentially, cf. Synthetic Indigo IDM at Cmt. 1, but see Carbon and Alloy Steel Wire Rod from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary Negative Determination of Critical Circumstances, 82 Fed.Reg. 50386 (Oct. 31, 2017), and an accompanying preliminary decision memorandum at 7 ("[i]n determining whether a party knew, or should have known, that its merchandise was destined for the United States, the Department's well-established practice is to consider such factors as: (1) whether the party prepared or signed any certificates, shipping documents, contracts or other papers stating that destination of
(continued...)

also consider whether the relevant party used any packaging or labeling showing that the merchandise was destined for a particular market, e.g, Certain Pasta from Italy: Termination of New Shipper Antidumping Duty Administrative Review, 62 Fed.Reg. 66602, 66602 (Dec. 19, 1997), or whether the features, brands, or specifications of the merchandise indicated that it was destined for that market, e.g., GSA, S.R.L. v. United States, 23 CIT 920, 77 F.Supp.2d 1349 (1999).

### B

This court remanded ITA's determination on Megaa Moda's knowledge of whether the contested sales[3] were not for consumption in the home market based on an inconclusive record on which ITA could not "articulate a satisfactory explanation for its action." Order at 42-43; see, e.g., id. at 31 ("AHSTAC's recounting, taken

---

[2]    (...continued)
the merchandise was the United States; (2) whether the party used any packaging or labeling which stated that the merchandise was destined for the United States; (3) whether any unique features or specifications of the merchandise otherwise indicated that the destination was the United States; and (4) whether that party admitted to the Department that it knew that its shipments were destined for the United States"), unchanged in Carbon and Alloy Steel Wire Rod from the Republic of Korea: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 83 Fed.Reg. 13228 (March 28, 2018).

[3]    Defined in Slip Op. 24-93 at 22.

as a whole, of the documentary record, provides sufficient circumstantial indication that it would be unreasonable to conclude, without more, that the contested sales were 'for consumption' in India"). Taken all in all, the court concluded that the way in which ITA "probed whether Megaa Moda knew or should have known whether the contested sales were 'for consumption' in India (or 'for export,' for that matter) le[ft] a record inconclusive as to whether the contested sales are properly considered part of normal value," id. at 40, including (1) the "unusual nature of the contested sales" compared to Megaa Moda's other home market sales, (2) reliance on the destination location in India without addressing points the plaintiffs made in respect thereof, (3) the form in which the product was sold and its volume,(4) the unbranded products being exempt from certain [[                                        ]], and (5) the seeming need for further processing of the contested sales.  Id. at 26-27, 40-42.

On remand, ITA addressed certain gaps in the record by reopening to obtain additional information.  See Supplemental Questionnaire (Sept. 13, 2024), P.R.R. 1; Megaa Moda Supplemental Questionnaire Response, P.R.R. 2.  It then concluded that the information demonstrates Megaa Moda's domestic sales of unbranded shrimp in India during the period of review did not incur [[

]].    <u>See</u>
<u>generally</u> <u>Remand Results</u>.

After evaluating Megaa Moda's supplemental response and reconsidering the application of the knowledge test in light of both new and existing record evidence, ITA continued to find that Megaa Moda had neither actual nor constructive knowledge that its sales to [[          ]] were destined for export to the United States. <u>Remand Results</u> at 10, 18.  No party argued that Megaa Moda had actual knowledge that the contested sales were meant for export to the United States, so the question distilled to whether Megaa Moda had constructive knowledge that those sales were meant for export, or, alternatively, whether Megaa Moda knew or should have known that the sales were not for consumption in the home market. <u>See</u> <u>id</u>. at 12-14.

ASPA argued that the new evidence on remand (which confirmed to ITA that unbranded shrimp sold domestically [[                    ]]) "is neutral, but not affirmative, evidence that the sales to [[          ]] were for home market consumption." <u>Id</u>. at 15.  ITA's response was that the same logic means "the product characteristics of the [contested] sales . . . are also neutral in their capacity to substantiate a finding that

Consol. Court No. 23-00202        <u>PUBLIC</u> <u>VERSION</u>            Page 10

the[y] . . . were not for consumption in the home market." <u>Id</u>. at

16.  Moreover, according to ITA, the record evidence "indicates

that the [[

        ]][,] and absent some affirmative evidence, [it] has no

basis to determine that Megaa Moda knew or should have known these

sales were destined for anything other than for consumption in the

home market." <u>Id</u>.

        ITA also considered the argument that "the volume and

nature of the [contested sales] indicate that they were not for

consumption in India", determined that "there is insufficient

evidence indicating that the [[                          ]] of

these sales are <u>exclusive</u> qualities of export sales", and concluded

that the contested sales "differed only slightly from its other

home market sales, and nothing [else] on the record indicates that

these sales could only have been meant for export." <u>Id</u>. at 14-15

(emphasis added).

        In addressing comments on the draft remand results, ITA

agreed with AHSTAC's argument that the applicable standard is not

whether the particular facts and circumstances surrounding the

sales indicate that Megaa Moda knew or should have known that the

sales in question were destined for the United States, but rather

Consol. Court No. 23-00202      <u>PUBLIC</u> <u>VERSION</u>      Page 11

whether they indicate that Megaa Moda knew or should have known that the sales were not for consumption in the home market.  ITA did not, however, find persuasive plaintiffs' argument that the [[    ]] nature of the contested sales demonstrated that the product is not ready for final consumption in India (<u>i.e.</u>, unbranded and [[    ]] shrimp cannot be sold for consumption in India but would have to have further processing and/or be repackaged prior to consumption), because the fact that shrimp would need to be further processed before consumption does not indicate that such sales can only be destined for export.  For that matter, ITA found the record insufficient to determining whether the contested sales were, in fact, further manufactured or repackaged, and that if there were such evidence, it would not necessarily undercut its conclusion that those sales were "for consumption" in the home market.  <u>Id</u>. at 17.

    ITA also addressed plaintiffs' argument that it should explain why the application of a domestic tax would be contingent upon its classification for export, and why a [[    ]] exemption premised on a classification system used for exportation and importation of goods reasonably supports a conclusion that sales of such goods were made for consumption in the home market.  ITA noted (only) that it is not uncommon practice for harmonized tariff

schedule (HTS) classifications to be used, as indicated in the name, simply to classify goods in an accessible and unified way, similar to what ITA does in its own antidumping and countervailing duty proceedings using HTS codes to identify merchandise comprising the scope of an order.  Id.

ITA's examination of the record evidence found little basis to find that Megaa Moda knew or should have known that the contested sales were destined for export because, ITA claims, the record evidence did not include "affirmative evidence" that those sales were meant for export; rather, it believed that the petitioners engaged only in "speculative" comparison of the Megaa Moda sales without substantiating their claims.  As a result, ITA continued to find it appropriate to treat the contested sales as home market sales in the calculation of NV.  Id. at 18.  Because it made no changes to its calculation regarding the treatment of Megaa Moda's home market sales, ITA made no changes to the margins calculated in the Final Results, id. at 19.

IV

The plaintiffs raise two points on the Remand Results.

Consol. Court No. 23-00202      <u>PUBLIC VERSION</u>                Page 13

A

They first argue that ITA misstates the knowledge test by conflating knowledge of whether goods were sold for export with knowledge of whether they were sold for consumption in the home market, a statutory standard.  Pls' Cmts at 8-12.  They press that ITA should have analyzed whether the contested sales were <u>not</u> for home consumption and be required to affirmatively demonstrate that the sales were for home market consumption.  <u>Id</u>.; <u>cf</u>. Def's Cmts Supporting Remand Results ("Def's Cmts") at 9.

Elaborating, they argue ITA's claim that its knowledge test requires that there be "affirmative evidence . . . such as the commercial invoice listing a final destination other than India" -- to show that the respondent knew what the "ultimate destination" was, before ITA will remove such sales from the universe of home market sales for calculating NV[4] -- has not been ITA's explanation of its knowledge test for normal value in other proceedings; rather, it has taken the position that "'knowledge of the destination of the merchandise' is not required for the agency to

---

[4]    <u>See</u> <u>Remand Results</u> at 16, citing <u>Certain Cut-to-Length Carbon-Quality Steel Plate Products From Italy: Final Results and Partial Rescission of Antidumping Duty Administrative Review</u>, 71 Fed.Reg. 39299 (Dep't Commerce July 12, 2006), and accompanying IDM at Cmt 1.

exclude a sale from the calculation of normal value, only that the
respondent 'knew or should have known the sales were not for home
consumption'."  Pls' Cmts at 11, quoting <u>INA Walzlager Schaeffler</u>
<u>KG v. United States</u>, 21 CIT 110, 123, 957 F.Supp. 251, 263 (1997).
The plaintiffs argue that ITA's position (<u>i</u>.<u>e</u>, that in order to
exclude home market sales under §1677b the respondent must be shown
to have had actual or constructive knowledge of the "ultimate
destination" of the merchandise) is unreasonable because export of
the goods to any foreign market necessarily eliminates any
possibility of consumption in the home market.  Pls' Cmts at 11-
12.[5]

        Moreover, they continue, because ITA applied a knowledge
test for home market consumption different than that applied in
other proceedings, the agency's decision is also arbitrary.  Pls'
Cmts. at 12, referencing <u>SKF USA Inc. v. United States</u>, 263 F.3d
1369, 1382 (Fed.Cir. 2001) ("it is well-established that 'an agency
action is arbitrary when the agency offer[s] insufficient reasons

---

        [5]  <u>See</u> <u>id</u>. at 12 ("[i]n applying this 'knowledge test,'
[ITA] considers both a seller's actual knowledge and its
constructive knowledge (i.e., that it should have known) of the
final destination of the merchandise at the time of sale") (citing
<u>Grain-Oriented Electrical Steel from the Czech Republic: Final</u>
<u>Determination of Sales at Less Than Fair Value and Final</u>
<u>Affirmative Determination of Critical Circumstances</u>, 79 Fed.Reg.
58324 (Sept. 29, 2014), and accompanying IDM at Cmt. 2).

for treating similar situations differently'"), quoting <u>Transactive</u> <u>Corp. v. United States</u>, 91 F.3d 232, 237 (D.C. Cir. 1996) (Federal Circuit's bracketing).

       Responding, the defendant argues the plaintiffs failed to exhaust administrative remedies on their broader contention here (that ITA "misstates and misapplies the knowledge test" by analyzing whether the sales in question were meant for export, and instead should have analyzed whether the contested sales were not for home consumption and be required to demonstrate that the sales are for home market consumption). Def's Cmts at 10, quoting AHSTAC Cmts at 9-12. The court concurs in part. On the one hand, plaintiffs' contention does not appear to implicate an exception to the exhaustion requirement such as a purely legal question. <u>See</u> <u>Saha Thai Steel Pipe Pub. Co. v. United States</u>, 46 CIT ___, ___, 605 F.Supp.3d 1348, 1366 (2022). The question raised, essentially, is whether ITA's methodology under the antidumping statute was reasonable, "which necessarily involves a mix[ed] question of law and fact requiring further involvement by the agency" to resolve. <u>Garg Tube Exp. LLP v. United States</u>, 48 CIT ___, ___, 698 F.Supp.3d 1230, 1242 (2024).

On the other hand, the parties' perception of the issue has appeared clear from the outset in their briefing. See, e.g., AHSTAC Cmts on Draft Remand Results at 11 ("The issue before the Department is whether Megaa Moda's sales to [[        ]] were for consumption in the home market"); Remand Results at 14 ("[w]e agree with AHSTAC that the applicable standard is not whether the particular facts and circumstances surrounding the sales indicate that Megaa Moda knew or should have known that the sales in question were destined for the United States, but rather whether they indicate that Megaa Moda knew or should have known that the sales were not for consumption in the home market"). The plaintiffs have consistently argued that the indicia of the contested sales showed that they could not have been for consumption in the home market but were destined for export. See, e.g., AHSTAC 56.2 Br. at 14-18.

If the test is for knowledge of whether sales were not for consumption in the home market, determining knowledge of whether sales were meant for export is simply another way of characterizing that test. Furthermore, ITA is not unreasonable in maintaining that some subject merchandise could be exported and still "consumed" in the home market for purposes of calculating normal value if the customer transformed the merchandise into

non-subject merchandise before exportation.  See Remand Results at 16-17.

As to plaintiffs' position, ITA was not persuaded then, and it is not persuaded now.  It has concluded that because there is no "affirmative" evidence (i.e., evidence demonstrating conclusively that Megaa Moda knew or should have known that the contested sales were meant for export), it could reasonably interpret the record before it as supporting a finding that Megaa Moda had neither actual nor constructive knowledge.  See Remand Results at 8-18; see also Hyundai Elecs. Indus. Co. v. United States, 28 CIT 517, 520-21, 342 F.Supp.2d 1141, 1146 (2004).

Whether exhaustion applies or not, ITA's method of analyzing plaintiffs' arguments on whether Magaa Moda had constructive knowledge that the contested sales were not for home market consumption is not unreasonable.  Of necessity, it was left with considering Megaa Moda's constructive knowledge[6] of the destiny of the contested sales as derived from the extrinsic sources of record.  See Remand Results at 13, citing Stupp Corp. v.

---

[6]  As ITA points out, "'the only way to determine actual knowledge is through an admission of the respondent,' and in the present case Megaa Moda has disclaimed such knowledge."  Remand Results at 13, quoting INA Walzlager, 21 CIT at 125, 957 F.Supp. at 265.

Consol. Court No. 23-00202        <u>PUBLIC</u> <u>VERSION</u>        Page 18

<u>United States</u>, 43 CIT ___, ___, 359 F.Supp.3d 1293, 1310 (2019). The court therefore cannot conclude, on the record before it, that ITA's method of analysis was inappropriate.

B

In addition, the plaintiffs argue that ITA failed to meaningfully grapple with the deficiencies identified in the Order, including record evidence that detracts from ITA's conclusion. Although the court agrees in part, concluding that Megaa Moda had constructive knowledge from such evidence that the contested sales were intended for export remains speculative.

The <u>Remand Results</u> dismiss arguments repeated by the plaintiffs on remand that the shrimp product sold to [[        ]] was unique among Megaa Moda's home market sales "because the sales were of [[            ]] shrimp and sold in [[        ]] form." <u>Remand Results</u> at 15.  According to ITA, the record provided "insufficient evidence indicating that the [[

    ]]" of Megaa Moda's sales to [[        ]] are "<u>exclusive</u> qualities of export sales."  <u>Id</u>. (emphasis added).

Whether that is true, the plaintiffs would argue that it is unreasonable to infer from this record that those are not indicative qualities of export sales -- far more so than they are

Consol. Court No. 23-00202        <u>PUBLIC</u> <u>VERSION</u>        Page 19

of home market sales in this instance.  <u>See</u>, <u>e</u>.<u>g</u>, Order at 40 ("the

[[        ]] of the contested sales were unique and [[

                    ]] home market sale made during the 12-month

period of review"); <u>see</u> <u>also</u> <u>id</u>. at 26-27 (the average volume of

the contested sales was [[    ]] times larger than the average

volume of the other [[   ]] home market sales Megaa Moda reported;

the contested sales were the [[    ]] sales of product sold in

[[              ]] in the home market and [[                ]] to

any other home market sale; and, furthermore, the contested sales

were the only sales of [[                  ]] product in the home

market (all of the other [[   ]] home market sales observations

were of [[                ]]), Megaa Moda reported [[

                    ]] to customers in the United States

similar to the [[


                    not only in terms of volume but consisting of [[


                    ]]); <u>see</u> <u>also</u> <u>GSA, S.R.L. v. United States</u>, 23 CIT

920, 927, 77 F.Supp.2d 1349, 1355 (1999) (different package sizes

for different markets).


                    Nonetheless, "the court may not substitute its judgment

for that of the [agency] when the choice is 'between two fairly

Consol. Court No. 23-00202          <u>PUBLIC</u> <u>VERSION</u>          Page 20

conflicting views, even though the court would justifiably have made a different choice had the matter been before it <u>de</u> <u>novo</u>.'". <u>Goldlink Indus. Co. v. United States</u>, 30 CIT 616, 618, 431 F.Supp. 2d 1323, 1326 (2006), quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); <u>see</u> <u>e</u>.<u>g</u>., <u>Cheng Shin Rubber Ind. Co. v. United States</u>, 47 CIT ___, ___, Slip Op. 23-16 at 28 (2023). At this point, the plaintiffs are asking the court to substitute its judgment on the record for that of ITA, but this court cannot conclude that the agency's determination implicating this "contrary" evidence is unreasonable.

      The intervenor-defendant also chimes in:

> Very recently, in <u>Certain Paper Shopping Bags From Colombia: Final Affirmative Determination of Sales at Less Than Fair Value</u>, 89 Fed.Reg. 45,843 (Dep't Commerce May 24, 2024) ("Final Determination"), the respondent informed [ITA] officials at the beginning of verification that it had discovered in preparation for verification a certain change on an invoice that led it to believe that the product on a reported home market sale likely was intended for resale to the United States. <u>Id</u>., Issues and Decision Memorandum, at Comment 1. The respondent confirmed this with its home market customer, who eventually did export the merchandise. <u>Id</u>. Nonetheless, [ITA] ultimately determined that the sale "was properly reported as a home market sale" and that the totality of the evidence did not support a finding that the respondent had knowledge at the time of sale that the merchandise was intended to be exported. <u>Id</u>. In that case, there was no evidence that the respondent had prepared or signed any documentation relevant to the shipping, handling, and packing of subject merchandise that indicated that the merchandise might be exported;

Consol. Court No. 23-00202    <u>PUBLIC</u> <u>VERSION</u>    Page 21

there was no evidence that the respondent used any
special labeling for the sale that reflected an export
destination; and tax information was not dispositive in
determining that the respondent knew that at the time of
sale that the merchandise would be re-routed for export.
<u>Id</u>. Thus, even when it appeared that the merchandise
actually was subsequently exported, [ITA] nonetheless
focused on the knowledge of the respondent at the time of
sale and determined that the sale in question was
properly reported as a home market sale. <u>Id</u>.

Int-Def. Cmts at 5.

V

In view of the foregoing, the <u>Remand Results</u> of ITA can

be affirmed.  Final judgment dismissing this action in its entirety

will enter accordingly.

So ordered.

Dated:    New York, New York
          July 8, 2025


          <u>/s/  Thomas J. Aquilino, Jr.</u>
                  Senior Judge